UNITED STATES BANKRUPTCY COURT       **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK

---

In re:                      Chapter 7

GEORGE WASHINGTON BRIDGE BUS     Case No. 19-13196 (DSJ)
STATION DEVELOPMENT VENTURE
LLC, et al.,

*Debtor.*

---

TUTOR PERINI BUILDING CORP.,        Adv. Proc. No. 21-01187 (DSJ)

*Plaintiff*,

-against-

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY,

*Defendant*.

---

### <u>MEMORANDUM OF DECISION AND ORDER GRANTING MOTION TO DISMISS</u>

**NIDA & ROMYN, P.C.**
*Counsel for Plaintiff*
12121 Wilshire Blvd., Suite 1100
Los Angeles, CA 90025
By:     Robert Nida, Esq.

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
*Counsel for Defendant*
One Manhattan West
New York, NY 10036
By:     Patrick G. Rideout, Esq.
          Jeffrey S. Geier, Esq.
          Thania Charmani, Esq.


**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of defendant The Port Authority of New York and New Jersey (the "Port Authority") to dismiss plaintiff Tutor Perini Building Corp.'s ("Tutor") complaint (the "Motion") [ECF No. 29.][1]  The Port Authority owns the site and improvements commonly known as the George Washington Bridge Bus Station, but leased the property for ninety-nine years to the George Washington Bridge Bus Station Development Venture LLC (the "Debtor").  Tutor claims that the Debtor owes it over $113 million for construction work performed pursuant to a prepetition construction contract (the "Construction Contract") between the Debtor and Tutor.  The Port Authority is not a party to the Construction Contract.  Tutor filed a proof of claim for this amount in the Debtor's bankruptcy.

Tutor filed numerous motions and appeals during the course of the Debtor's bankruptcy in an effort to recover on its unsecured claim.  Tutor also has filed freestanding lawsuits against parties other than the Debtor seeking to recoup what Tutor asserts it is owed.  This lawsuit is Tutor's second against the Port Authority, and raises substantially identical factual allegations as its first such suit, augmented by allegations that a settlement between the Port Authority and Debtor in 2020 independently injured Tutor and supports claims for recovery.

Specifically, Tutor's complaint asserts that the Port Authority's entry into a Court-approved settlement (the "Settlement Agreement") with the Debtor, among others, as part of the bankruptcy resulted in unjust enrichment to the Port Authority and tortiously interfered with Tutor's rights under its Construction Contract with the Debtor.  The Port Authority has moved to

---

[1] The Court has considered the following papers in ruling on the Motion:  (i) Plaintiff's *Summons and Complaint* (the "Complaint") [ECF No. 1-5]; (ii) *Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Complaint* [ECF No. 29]; (iii) *Plaintiff's Opposition to Motion to Dismiss* [ECF No. 31]; (iv) Plaintiff's *Request for Judicial Notice* [ECF No. 32]; (v) *Defendant's Reply Memorandum of Law in Further Support of Its Motion to Dismiss the Complaint* [ECF No. 34]; (vi) *Plaintiff Tutor Perini Building Corp.'s Supplemental Brief in Support of Opposition to Motion to Dismiss* [ECF No. 40]; and (vii) *Defendant's Supplemental Brief Addressing the Effect of Section 1 of the Settlement Agreement on the Accrual Date of Plaintiff's Unjust Enrichment Claim* [ECF No. 42].  The Court heard oral argument on July 8, 2022.

dismiss, arguing that (i) Tutor fails to state a claim for unjust enrichment or tortious interference; (ii) Tutor's claims are barred by res judicata or collateral estoppel and preempted by bankruptcy law; and (iii) Tutor's claims are untimely under N.Y. Unconsol. Law § 7107 (the "Suability Statute") because they accrued more than one year before commencement of this action.

For the reasons detailed below, the Motion is granted and Tutor's Complaint is dismissed with prejudice.

## JURISDICTION

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

## APPLICABLE LEGAL STANDARDS

The Port Authority moves to dismiss Tutor's Complaint pursuant to Federal Rules of Civil Procedure (Fed. R. Civ. P.) 8, 12(b)(1) and 12(b)(6), made applicable to this adversary proceeding by Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. P.) 7008 and 7012(b).

### 1. Rule 8 – Pleading Standard

Fed. R. Civ. P. 8, made applicable here by Fed. R. Bankr. P. 7008, "requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *In re Brizinova*, 592 B.R. 442, 458 (Bankr. E.D.N.Y. 2018) (quoting Fed. R. Civ. P. 8(a)(2)). Although detailed factual allegations are not required, Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id*. (quoting *Twombly*, 550 U.S. at 557).

### 2. Rule 12(b)(1) – Dismissal for Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A court must view the complaint liberally and accept as true all material facts alleged in the complaint when considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *In re Ener1, Inc.*, 558 B.R. 91, 94 (Bankr. S.D.N.Y. 2016) (citations omitted). The court may consider extrinsic evidence, such as affidavits, documents, and deposition testimony, but may not rely on conclusory or hearsay evidence. *Id.* (citations omitted). "[T]he plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).

### 3.   Rule 12(b)(6) – Dismissal for Failure to State a Claim

"A Rule 12(b)(6) motion tests the sufficiency of the allegations in support of a complaint in light of the pleading requirements in Rule 8 of the Federal Rules of Civil Procedure." *In re Extended Stay, Inc.*, Case No. 09-13764-JLG, Adv. Pro. No. 11-02254-JLG, 2020 WL 10762310, at * 5 (Bankr. S.D.N.Y.  Aug. 8, 2020). To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. When considering a motion to dismiss under Rule 12(b)(6), "a court should accept 'all [well-pleaded] factual allegations as true and draw [ ] all reasonable inferences in the plaintiff's favor.' " *In re Brizinova*, 592 B.R. at 459 (citing *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010)). "A court is not required to accept as true those allegations that amount to no more than legal conclusions." *Id.* (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555).

In general, a court is "limited to the allegations contained in the 'four corners of the complaint[.]' " *In re Extended Stay, Inc.*, 2020 WL 10762310, at * 5. A complaint is 'deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "However, 'even if [a document] is not formally incorporated by reference' a court may consider it if it was 'integral to the complaint.' " *Id.* (quoting *Chambers*, 282 F.3d at 153). "A court also may consider 'matters of which a court may take judicial notice.' " *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 322 (2007)). "In the context of bankruptcy litigation, the public records of which the court may take judicial notice include documents filed in a related bankruptcy proceeding, an adversary proceeding and the underlying bankruptcy case." *Id.* The Port Authority did not submit any documents in support of its Motion. But it relies heavily on the (i) Ground Lease; (ii) Construction Contract; and (iii) Settlement Agreement (as defined below), all of which are cited by Tutor in its Complaint. These documents are clearly integral to the Complaint, and each party treated them as something the Court should consider in ruling on the Motion. The Court, accordingly, will do so.

## FACTS

The facts below are taken from the Complaint and documents susceptible to judicial notice. *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016).

### A. The Relationship Between Port Authority and Debtor

The Port Authority owns and operates the George Washington Bridge Bus Station (the "Station"), a transit facility located in New York City between 178th and 179th Streets and Fort Washington and Wadsworth Avenues. (Complaint ¶ 3). On June 30, 2011, the Port Authority approved a $183.2 million renovation and improvement plan for the Station (the "Project").

(Complaint ¶ 4).  The Project was a public-private venture between the Port Authority, as owner, and the Debtor, as ground lessee and developer/contractor.  (Complaint ¶ 5).  On July 21, 2011, the Port Authority entered into a written ground lease with the Debtor (the "Ground Lease"). (Complaint ¶ 6).  Under the Ground Lease the Debtor was permitted to use and operate portions of the Project as retail space for a term of 99 years.  (Complaint ¶ 6).  The Ground Lease provided that certain space would be designed and built by the Debtor and returned to the Port Authority for it to use and operate as a bus terminal and public spaces.  (Complaint ¶ 6).

The Ground Lease required the Debtor to retain qualified, licensed and bonded contractors to perform the physical work requiring such qualifications (the "Contractors").  Section 5.7(c) of the Ground Lease provided that:

> (c)      Except as provided in Section 5.4 hereof, the Port Authority shall have no obligations or liabilities in connection with the performance of any Construction Work or the contracts for the performance thereof entered into by the [Debtor].  Provided that the Port Authority shall pay the amounts due and owing under Section 5.4 hereof, the [Debtor] shall pay all claims lawfully made against it by its contractors, subcontractors, material-men and workmen and all claims lawfully made against it by other third persons arising out of or in connection with or because of the performance of the Construction Work and shall cause its contractors and subcontractors to pay all such claims lawfully made against them. The obligations assumed by the [Debtor] in this Article, as well as elsewhere in this Agreement, shall not be limited, affected, impaired or in any  manner modified by the Port Authority's approval of the Approved Construction Documents or any Modification Applications or contracts covering the Construction Work.

(Complaint ¶ 7(d); Main Case ECF No. 175-1 (*Agreement of Lease between The Port Authority of New York and New Jersey and George Washington Bridge Bus Station Development Venture LLC dated as of July 21, 2011*)).  In sum, according to Section 5.7(c) the Port Authority was not responsible for paying Project subcontractors like Tutor directly.

## B.  The Construction Contract Between the Debtor and Tutor

On June 26, 2013, the Debtor and Tutor entered into a written contract (the "Construction Contract"), whereby the parties acknowledged that the Debtor was obligated under the Ground Lease to perform certain construction work on the Project. (Complaint ¶ 8). Tutor was contracted to perform specified work on the Project including making structural changes and reconstructing certain buildings on the Project site. (Complaint ¶ 8). Sections of the Ground Lease, including section 5.7, were expressly incorporated into the Construction Contract. (Complaint ¶ 8). Tutor began work under the Construction Contract in late 2013. (Complaint ¶ 9).

During the Project, the parties provided for payment to Tutor in the following manner. (Complaint ¶ 13). Each month, following the completion of scheduled work, Tutor would issue the Debtor a payment application seeking compensation for costs and labor expended on the Project that month. (Complaint ¶ 13). The Debtor then applied to the Port Authority and the Debtor's lenders for the disbursement of funds for the purpose of paying Tutor and others for their construction work. (Complaint ¶ 13). The Debtor made progress payments in connection with Tutor payment applications Nos. 1 through 29. (Complaint ¶ 14). However, despite issuing approved final copies for payment applications Nos. 30 through 44, the Debtor failed to make payments thereon. (Complaint ¶ 14).

In addition to Tutor's work under the Construction Contract, the Port Authority issued orders directly to Tutor that (a) required Tutor to perform significant amounts of additional, extra or out of scope work, (b) interfered with Tutor's means and methods of construction, (c) caused additional impacts from differing site conditions, and (d) caused delays to Tutor's Project work. Tutor was required to perform this additional work and to pay its subcontractors, suppliers and others to perform this work. (Complaint ¶ 16).

7

Before the Project was completed, the Debtor and Tutor had become embroiled in arbitration over the Debtor's failure to make payments to Tutor (the "Arbitration"). (Complaint ¶ 18). Once substantial completion was achieved, the Port Authority and its officials opened the bus facility with great fanfare, taking credit in the press for making substantial improvements to the infrastructure of New York and to the quality of life of the residents of the community and the commuting public. (Complaint ¶ 19).

During the Arbitration, Tutor applied for an order of attachment of the funds paid by the Port Authority and lenders to the Debtor. (Complaint ¶ 21). The Arbitration panel granted Tutor's application and ordered attachment of $23 million (the "Arbitration Award"). (Complaint ¶ 21).[2] Tutor petitioned the District Court to confirm the Arbitration Award. By order entered July 15, 2019, the District Court granted Tutor's petition.[3] The Debtor filed for bankruptcy in this Court on October 7, 2019. (Complaint ¶ 22). The Debtor's only asset was its leasehold of the Project, which it valued at tens of millions of dollars. (Complaint ¶ 22). Tutor filed a claim in the bankruptcy and advised the Port Authority that it intended to seek its asserted cure rights under § 5.7(c) of the Ground Lease and Construction Contract. (Complaint ¶ 22).

### C. The Settlement Order

On June 2, 2020, the Port Authority entered into the Settlement Agreement. (Complaint ¶ 23). As the Complaint emphasizes, the Settlement Agreement provides that the Port Authority waives its entitlement to certain contract rights that Tutor alleges inured to its benefit through § 5.7(c) of the Ground Lease. (Complaint ¶ 23). Specifically, the Port Authority

---

[2] *See also Tutor Perini Building Corp. v. George Washington Bridge Bus Station Development Venture, LLC*, Case No. 1:19-cv-05344-RA (S.D.N.Y. 2019), Petition to Confirm Arbitration Award [ECF No. 1], Ex. C (Interim Orders) [ECF No. 1-4].
[3] *Id*. [ECF No. 39 (Order)].

(a) expressly waives any cure claim it may have under section 5.7(c) of the Ground Lease, and (b) acknowledges and agrees that (i) neither Tutor Perini nor any other third-party is a third-party beneficiary entitled to assert or receive payments under section 5.7(c) of the Ground Lease, and (ii) it is the Port Authority's intention that as a result of the Port Authority's express waiver, neither the Port Authority nor any other party (including any party claiming through the Port Authority or on account of the Port Authority's claim) will receive payments under section 5.7(c) of the Ground Lease. The Port Authority also permanently and expressly waives any indemnification claims against the Debtor (and all of its successors and assigns) under the Ground Lease for any claims against the Port Authority arising from the Port Lawsuit or any other Indemnified Matter (as defined below) other than with respect to the Escrowed Funds (as defined below).

[Main Case ECF No. 289-2 (Settlement Agreement)].

The Bankruptcy Court held a hearing on July 14, 2020 to determine whether the Settlement Agreement complied with Fed. R. Bankr. P. 9019; finding that it did, the then-assigned Judge of this Court rendered an oral decision approving Settlement Agreement and entered a written order on August 12, 2020 [ECF Nos. 347 and 361] (the "Settlement Order").

In its Settlement Order the Court determined that:

(a) Tutor Perini is not a third-party beneficiary of the Ground Lease and (b) Tutor Perini has no right to assert a cure claim pursuant to Section 365 of the Bankruptcy Code.

The Settlement Order also provided, among other things, that it was:

**ORDERED**, that the Settlement Agreement between the Settlement Parties is hereby approved pursuant to Bankruptcy Rule 9019, and the Debtor is authorized and directed to take such action as is necessary to effectuate the terms of the Settlement Agreement; and it is further

**ORDERED**, that *Tutor Perini Building Corp's Limited Objection to Debtor's Motion for an Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving the Settlement of Certain "Cure" and Indemnification Disputes as Between the Debtor, New York City Regional Center, LLC, and The Port Authority of New York and New Jersey* [D.I. 309] is overruled in its entirety; and it is further

**ORDERED**, the approval of the Settlement Agreement does not prohibit Tutor Perini Building Corp. from asserting claims and causes of action in other courts against the Prepetition Lenders, the Port Authority, and other non-Debtor third

parties, including current or former officers of the Debtor, to the extent those claims and causes of action are not inconsistent with this Court's Order, findings of fact, or conclusions of law;

(Emphasis in original).

Tutor appealed the Settlement Order to the District Court seeking review of a narrow question of law:  Whether the Bankruptcy Court erred by barring Appellant from asserting claims inconsistent with the Bankruptcy Court's settlement order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.   On February 25, 2021, the District Court entered an order affirming this Court's ruling, stating:

> Appellant argues that the doctrines of preclusion extend only to the Bankruptcy Court's approval of the Settlement Agreement.  Appellant is mistaken.  Collateral estoppel prevents parties or their privies from relitigating any issue of fact or law that was "fully and fairly litigated" and was "necessary to support a valid and final judgment on the merits" in a prior proceeding [footnote citations omitted].  Here, the parties extensively briefed the issues raised in Appellant's objection, including its third-party beneficiary and right-to-cure arguments.  The Bankruptcy Court issued a detailed and reasoned order, approving the settlement, overruling the sole objection, and concluding that Appellant does not have third-party beneficiary or cure rights.  The Bankruptcy Court's rulings speak directly to matters raised in Appellant's objection and are central to protect the Settlement Agreement and the Bankruptcy Court's authority and jurisdiction.  The potential preclusive effect, therefore, extends beyond the Bankruptcy Court's approval of the Settlement Agreement and reaches any issues necessarily litigated and decided by the Bankruptcy Court [footnote citations omitted].  Simply put, having objected to the motion, and having fully briefed and argued the issues pertaining to its objection, Appellant may not now argue that the Bankruptcy Court erroneously expanded the scope of the Settlement Order.

*In re George Washington Bridge Bus Station Dev. Venture LLC*, Case No. 20 Civ. 7257 (AKH), 2021 WL 738755, *3 (S.D.N.Y. Feb. 25, 2021).

### D.  The Ground Lease Order

On August 11, 2020 this Court entered an Order Regarding Disputed Ground Lease Issues [Main Case, ECF No. 358] (the "Ground Lease Order").  The Order, once again, determined that

"Tutor Perini is not a third-party beneficiary of the Ground Lease and that Tutor Perini has no right to assert a cure claim under Section 365 of the Bankruptcy Code."  [*Id*. p. 4 ¶ 3].

Tutor appealed the Ground Lease Order to the District Court.  On August 4, 2021 the District Court entered an order affirming this Court's order, stating:

> Tutor Perini was *never* a party to the ground lease, and it has no contractual right to bring a cure claim thereunder [footnote omitted].

> For the foregoing reasons, the Bankruptcy Court's order concluding that Tutor Perini is not a third-party beneficiary of the ground lease and that Tutor Perini has no right to assert a § 365(b)(1)(A) cure claim thereunder, *see* Bankr. Dkt. 358, is hereby affirmed.

*In re George Washington Bridge Bus Station Dev. Venture LLC*, Case No. 20-cv-7433 (JSR), 2021 WL 3403590, *6 (S.D.N.Y. Aug. 4, 2021).

Tutor's appeal of the District Court's order is pending before the Second Circuit Court of Appeals, where it has been assigned docket number 21-2050.

### E.   First Lawsuit by Tutor Against Port Authority

Tutor filed a prior action in New York Supreme Court, New York County against the Port Authority, asserting claims of breach of contract and unjust enrichment seeking the same payment for the same construction work that was at issue in the Arbitration, *see Tutor Perini Bldg Corp. v. Port. Auth. of N.Y. & N.J.*, Index No. 156211/2018 (Sup. Ct. N.Y. Cnty.) (the "First State Action").  In the First State Action, Tutor alleges that the Port Authority breached the Construction Contract and was unjustly enriched by the construction work Tutor allegedly performed at the Project.  The breach of contract claim was dismissed, *see Tutor Perini Bldg. Corp. v. Port Auth. of N.Y. & N.J.*, 191 A.D.3d 569, 569-71 (1st Dep't 2021), and the unjust enrichment claim was dismissed by the trial court on April 11, 2022 based on Tutor's failure to comply with the Suability

Statute prior to commencing the action. *Tutor Perini Bldg Corp. v. Port. Auth. of N.Y. & N.J.*, Index No. 156211/2018 (Sup. Ct. N.Y. Cnty. April 11, 2022).

### F.  This Adversary Proceeding

Tutor originally filed the Complaint that gave rise to this action against the Port Authority in the Supreme Court of the State of New York, County of New York on August 11, 2021.  [ECF No. 1-5].  The Port Authority removed the case to the United States District Court for the Southern District of New York on September 21, 2021 [ECF No. 1].  The District Court transferred the case to this Court on September 21, 2021 pursuant to its *Amended Standing Order of Reference* dated January 31, 2012.

The Complaint includes both factual allegations that are also included in Tutor's prior lawsuit against the Port Authority, and new allegations centering on the 2020 Settlement Agreement between the Port Authority and Debtor.  The Complaint asserts two counts against the Port Authority as follows.

In Count I, Tutor contends that because the Port Authority settled with the Debtor, and as part of the Settlement waived the Port Authority's valuable cure rights under the Ground Lease,[4] the Port Authority was unjustly enriched in retaining the benefits of Tutor's work on the Project while destroying Tutor's rights to obtain payment for that work.  Tutor claims that it is entitled to recover the reasonable value of the construction work it performed.  Tutor seeks judgment on its unjust enrichment claim in an amount to be determined at trial but estimated to be not less than $113 million in compensatory, consequential and incidental damages.

In Count II, Tutor alleges that the Port Authority knew about the Debtor's breaches of the Construction Contract and that the Port Authority nevertheless intentionally interfered with Tutor's

---

[4] The Port Authority's "cure rights" refer to the Port Authority's entitlement under § 5.7(c) of Ground Lease to demand that the Debtor pay amounts it owed to its contractors, such as Tutor.  *See supra* p. 6.

rights under the Construction Contract by, among other things, entering into the Settlement with the Debtor. Tutor asserts that the Port Authority's settlement and waiver of cure rights had the effect of fully and finally cutting off any possibility that the Debtor would cure its default on the Debtor's obligations to Tutor under the Construction Contract. Tutor seeks judgment on its tortious interference with contract claim in an amount to be determined at trial but estimated to be not less than $113 million in compensatory, consequential, and incidental damages.

## ANALYSIS

### A. Subject Matter Jurisdiction

Laws enacted by the New York and New Jersey legislatures waived sovereign immunity to permit suits against the Port Authority. That waiver was predicated expressly upon compliance with the "jurisdictional conditions precedent" set out in § 7107 of the N.Y. Unconsolidated Law (the "Suability Statute").[5] *Luciano v. Fanberg Realty Co.*, 102 A.D.2d 94, 95 (1st Dep't 1984); *Giannone v. Port Auth. of N.Y. & N.J.*, 127 A.D.2d 818, 819 (2d Dept. 1987) (consent to suit is predicated "upon compliance with certain conditions" that are both "mandatory" and "jurisdictional"). "Satisfaction of the prerequisites is an issue of subject matter jurisdiction and failure to comply with [the jurisdictional requirements] ordinarily requires dismissal." *Privat Air, S.A. v. Port Auth. of N.Y. & N.J.*, No. 05-CV-2213, 2007 WL 2089285, at *2 (E.D.N.Y. July 19, 2007 (citations omitted).

The Suability Statute allows an action against the Port Authority only "*upon the condition that any suit, action or proceeding prosecuted or maintained under this act shall be commenced within one year after the cause of action therefor shall have accrued[.]*" McKinney's Uncons. Laws of N.Y. § 7107 (emphasis supplied). In other words, a party that does not commence an

---

[5] The New Jersey equivalent of Section 7107 is codified at N.J.S.A. 32:1-163.

action within one year of a cause of action accruing cannot establish subject matter jurisdiction. *See Lumbermens Mut. Cas. Co. v. Port Auth. of N.Y. & N.J.*, 137 A.D.2d 796, 797 (2d Dep't 1988) (reversing trial court decision denying motion to dismiss, court held that one-year requirement was condition precedent and "[f]ailure to satisfy this condition results in a withdrawal of consent and compels the dismissal of the action for lack of subject matter jurisdiction."). Tutor commenced this action in state court on August 11, 2021 [ECF No. 1-5].

Under New York law, unjust enrichment claims begin to accrue "upon the occurrence of the wrongful act giving rise to a duty of restitution." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518, 520 (2d Cir. 2001). A tortious interference with contract claim accrues when the injury is sustained. *Kronos, Inc. v. AVX Corp*. 81 N.Y.2d 90, 94 (1993). The dispositive question as to the jurisdictional timeliness issue, then, is when Tutor's claims accrued.

According to the Complaint, Tutor's claims accrued August 12, 2020, the date that the Court entered the Settlement Order approving the Port Authority's waiver of its cure rights under the Ground Lease. The Port Authority argues that Tutor's claims accrued on either June 2, 2020, the date of the Settlement Agreement, or, alternatively, July 14, 2020, the date that the Court orally approved the Settlement Agreement, but in either case more than one year before Tutor filed this action.

Although neither party brought this to the Court's attention in their initial papers, the Settlement Agreement provides, in relevant part,

> 1.    <u>Approval Order and Effective Date</u>. For purpose of this Agreement, "<u>Approval Order</u>" means an order entered by the Bankruptcy Court approving this Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"). The "<u>Effective Date</u>" of this Agreement is the date the Bankruptcy Court enters the Approval Order. The Port Authority, Debtor, and Senior Lenders shall use commercially reasonable efforts to obtain the Approval Order. If the Effective Date does not occur on or before July 17, 2020, or the Approval Order is overturned on appeal, unless otherwise agreed by the Parties in

writing, this Agreement shall be deemed null and void ab initio, and the Parties shall be restored to their respective positions as of June 2, 2020.

On June 5, 2020, the Debtor filed a *Motion for an Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving the Settlement of Certain "Cure" and Indemnification Disputes as Between the Debtor, New York City Regional Center, LLC, and the Port Authority of New York and New Jersey* (the "9019 Motion").

On July 14, 2020, this Court held a hearing on the 9019 Motion and after a lengthy discussion orally ruled:

> For all the foregoing reasons, the Court overrules the objection of Tutor Perini and concludes that (1) the settlement agreement shall be approved pursuant to Bankruptcy Rule 9019 and (2) that Tutor Perini is not a third-party beneficiary of the ground lease and cannot otherwise assert a cure claim on account of the ground lease, pursuant to Section 365 of the Bankruptcy Code. Accordingly, the 9019 motion is granted and the limited objection of Tutor Perini is denied, except to the extent it seeks to carve out Tutor Perini's rights with respect to litigation in other fora against the Port Authority of NYCRC that is not inconsistent with the Court's ruling here today.
>
> Parties are directed to submit an order consistent with this decision.

[ECF No. 337 (July 14, 2020 Hearing Transcript) at 80:24-25; 81:1-11].

On August 12, 2020 the Court entered its *Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving the Settlement of Certain "Cure" and Indemnification Disputes as Between the Debtor, New York City Regional Center, LLC and the Port Authority of New York and New Jersey* [ECF No. 361].[6] Moreover, this Court stated in the Approval Order that "this Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof[.]" [*Id*. at 6]. Tutor filed

---

[6] On August 12, 2020 this Court also entered an *Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving the Settlement of Certain "Cure" and Indemnification Disputes As Between the Debtor, New York City Regional Center, LLC and the Port Authority of New York and New Jersey* [ECF No. 360]. This Order was superseded by the Settlement Order entered a few minutes later so as to include a copy of the July 14, 2020 hearing transcript.

its Notice of Appeal the same day.  On February 25, 2021, the District Court entered an order

affirming the Approval Order.[7]

The Order entered by the Bankruptcy Court on August 12, 2020 is the "Approval Order"

referenced in paragraph 1 of the Settlement Agreement, and August 12, 2020 is therefore the

Settlement Agreement's "Effective Date."   Tutor's claims based on the Settlement Agreement

therefore accrued when the Port Authority's waiver was finally accepted by this Court on August

12, 2020 – within a year before Tutor commenced this action on August 11, 2021.  No earlier

accrual date is plausible because the objected-to Settlement Agreement by its own terms only

became "effective" upon entry of the Approval Order, and, until and unless the Approval Order

was entered, the Settlement Agreement according to its own terms was to be "deemed null and

void ab initio."

Thus, to the extent Tutor relies on the Settlement in support of its claims, neither the

allegedly "wrongful act" giving rise to Tutor's asserted entitlements nor the alleged resulting

benefit to the Port Authority was "effective" or complete until the entry of the Approval Order on

August 12, 2020.  Tutor's Settlement-related claims were filed within one year of that date, and

therefore are timely filed under the Suability Statute.  The Port Authority's motion to dismiss these

aspects of the Complaint for lack of subject matter jurisdiction is therefore denied.

However, to the extent Tutor seeks to collect in this action based on the broader course of

conduct involving the Port Authority, the Debtor, and Tutor, that course of conduct largely or

completely pre-dated August 11, 2020, and therefore occurred more than one year before the filing

of this action.  Those claims duplicate claims brought in Tutor's first-filed lawsuit against the Port

Authority; this reality confirms that the claims were ripe and accrued more than one year before

---

[7] 20 Civ. 7257 (AKH), ECF No. 24.

Tutor commenced this more recent action. Those claims are therefore time-barred in this action, and the Court partially grants the Port Authority's motion pursuant to Rule 12(b)(1) so as to dismiss any claim based on that earlier course of conduct.

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

Having determined that solely the portions of the Complaint based on the Port Authority's entry into the Settlement Agreement are timely and thus within the Court's subject matter jurisdiction, the Court next considers whether the Complaint states a claim on which relief can be granted based on the impact of the Settlement Agreement. The Court concludes that Tutor fails to state a viable claim, particularly in light of prior determinations of this Court that Tutor is not a third-party beneficiary of the Ground Lease and lacks any directly held cure rights based on that contract. Those determinations bind Tutor and the Court under the doctrine of collateral estoppel, and preclude any viable claim premised on the idea that the Port Authority acted outside its own rights when it entered a bilateral settlement with Debtor to resolve those two entity's respective rights and obligations as against one another.

#### 1. Collateral Estoppel

In considering motions to dismiss pursuant to Rule 12(b)(6), even though the Court must accept Tutor's factual allegations as true and draw all reasonable inferences in Tutor's favor, issue preclusion "will nonetheless bar a plaintiff's claim when [a] plaintiff's 'factual allegations have been decided otherwise in a previous litigation.'" *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014) (citations omitted). "[I]t is well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion." *Linden Airport Mgmt. Corp. v. N.Y.C. Econ. Dev. Corp.*, No. 08 Civ. 3810(RJS), 2011 WL 2226625, at *3 (S.D.N.Y. June 1, 2011). "In such instances, dismissal is appropriate when 'it

is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of law.'" *Lefkowitz*, 23 F.Supp.3d 344 at 360 (quoting *Linden Airport Mgmt. Corp.*, 2011 WL 2226625, at *3).

Collateral estoppel, as the Port Authority emphasizes, bars "['successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation omitted). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" both issue preclusion (also referred to as collateral estoppel) and claim preclusion (also referred to as res judicata) "protect against 'the expense and vexation attending multiple lawsuits, conserve[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). The Court here focuses on the impact of this Court's two prior orders determining that Tutor was not a third-party beneficiary of, and had no direct rights arising under, the Ground Lease between the Port Authority and Debtor.

"Federal principles of collateral estoppel, which are applied 'to establish the preclusive effect of a prior federal judgment,' prohibit a party from relitigating an issue where '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *In re Waypoint Leasing Holdings Ltd.*, 607 B.R. 143, 157–58 (Bankr. S.D.N.Y. 2019) (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)).

Tutor's unjust enrichment and tortious interference with contract claims assert two mechanisms of injury resulting from the Settlement, by which the Port Authority waived rights including its rights under section 5.7 of the Ground Lease, which among other things gave the Port Authority the right to demand that Debtor paid its contractors, including Tutor. First, Tutor alleges that, by entering into the Settlement Agreement, the Port Authority deprived Tutor of direct rights that Tutor asserts it had under the Ground Lease, presumably as a third-party beneficiary. But this Court has squarely and explicitly rejected that exact theory twice in two separate final orders, determining that "(a) Tutor Perini is not a third-party beneficiary of the Ground Lease and (b) Tutor Perini has no right to assert a cure claim pursuant to Section 365 of the Bankruptcy Code." [Settlement Order at 5; Ground Lease Order at 4]. Both of these decisions were affirmed on appeal by the District Court. *See George Washington Bridge Bus Station Dev. Venture*, 2021 WL 738755, at *4; *In re George Washington Bridge Bus Station Dev. Venture LLC*, 2021 WL 3403590, at *6. Tutor accordingly is collaterally estopped from relying on that theory here.

Tutor's other theory is that the Port Authority's entry into the Settlement Agreement both unjustly enriched the Port Authority at Tutor's expense, and tortiously interfered with Tutor's own contract rights, in both cases by thwarting or eliminating Tutor's ability to collect from Debtor on account of Tutor's construction work under its contract with Debtor. That theory is discussed in the following section of this decision.

### 2.   Unjust Enrichment Merits Based on Alleged Effects of Settlement on Tutor

"A claim for unjust enrichment under New York law has three elements. These are that the defendant was enriched, at the plaintiff's expense, and that equity and good conscience militate against permitting the defendant to retain what the plaintiff seeks to recover. *In re Michel*, 573 B.R. 46, 64 (Bankr. E.D.N.Y. 2017) (citing *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d

296, 306 (2d Cir. 2004)). "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in absence of an agreement." *In re Brooklyn Renaissance, LLC*, 556 B.R. 68, 76 (Bankr. E.D.N.Y. 2016).

The Port Authority argues that Tutor does not plausibly state an unjust enrichment claim because: (i) its claim is barred by the existence of the Construction Contract; (ii) Tutor has not adequately alleged that any action on the part of the Port Authority was unjust; (iii) the Port Authority was free to waive its rights under the Ground Lease and such exercise of contractual rights cannot be considered to be against equity and good conscience; and (iv) Tutor fails to allege any damages.

Tutor responds that it adequately alleges each element of its unjust enrichment claim and that: (i) its claim is not barred by the Construction Contract because Tutor alleges payment obligations for work performed *outside* the scope of the Construction Contract; (ii) the "unjustness" of the Port Authority's waiver was not the waiver in-and-of-itself but as a part of a deliberate act meant "to deny TPBC its last clear chance to recover the millions it was owed for construction work already performed and [that] was also in process;" (iii) the Port Authority was enriched by waiving its cure rights because by doing so the Port Authority increased the value of the Debtor's Leasehold estate, which inured to its benefit as Lessor and as residual owner of the property; and (iv) the remedy for unjust enrichment is restitution, not damages. The Complaint further asserts that Tutor has a right to restitution in the value of the improperly retained benefit, *i.e.* the construction work for which no payment was made or some other economic measure of the value conferred to the Port Authority.

The Court assumes arguendo that Tutor has adequately alleged the first element of an unjust enrichment claim, here, that the Port Authority was enriched by its waiver of its cure rights

under the Ground Lease. Tutor alleges that it performed construction work on the Project, that the Debtor failed to pay Tutor for much of that work, and that the Port Authority received the benefit of the Project, both for its bus terminal operations, utilities, and the collection of rental income from the developed retail property, and more generally through the Port Authority's realizing the benefit of improvements to an important transportation hub and clearing the way for a bankruptcy sale of that property to a new owner.

Tutor has not plausibly alleged, however, the second element of its claim, namely that the defendant's "enrichment" came at the plaintiff's expense. The sole surviving and potentially viable basis for Tutor's claim is the Port Authority's entry into the Settlement Agreement with Debtor, which Tutor asserts eliminated the last chance Tutor had to collect via the construction contract it had with Debtor by waiving the Port Authority's contractual right to insist that Debtor meet specified financial obligations of Debtor, including those Debtor owed to Tutor. But the complaint fails to allege facts supporting a plausible inference that the Port Authority's settlement of its own rights, including its contractual right to instruct Debtor to pay Tutor and others, actually deprived Tutor of any payment. The Court can take judicial notice of Debtor's bankruptcy, Tutor's only theory is that the Port Authority could have opposed the resolution of the bankruptcy sale that occurred and instead insisted on a longer effort to achieve a more lucrative outcome that might have yielded more funds to Tutor, and that by choosing instead to settle with Debtor the Port Authority eliminated Tutor's last hope of payment. This theory is pure speculation, and certainly not the sort of factual allegation that takes the claim into the realm of plausibility as required to survive a motion under Rule 12(b)(6) as construed by, among other cases, *Iqbal, Twombly,* and the many cases that apply them.

Nor does Tutor allege facts sufficient to permit a plausible inference as to the third element of Tutor's unjust enrichment claim, namely, that equity and good conscience militate against permitting the Port Authority to retain the benefit that it allegedly achieved by entering into the Settlement Agreement. Again, the sole distinctive and timely basis for the claims in this action is the Port Authority's entry into the Settlement Agreement in 2020. Tutor objected to the motion to approve that Settlement Agreement, and received a full hearing, upon which this Court rejected Tutor's contentions and determined that Tutor had no rights under the contract being settled, such that the Port Authority was free to resolve its bilateral dispute with Debtor on the terms those parties agreed to. That determination was approved on appeal to the District Court. And Tutor knowingly entered its contract with Debtor well after and subject to the agreement between the Port Authority and Debtor that the Port Authority "shall have no obligations or liabilities in connection with the performance of any Construction Work. . . ." *See supra* at 6. In the face of these binding realities and prior decisions that have collateral estoppel effect here as to the questions whether Port Authority was entitled to resolve its dispute with Debtor and whether Tutor had any third-party beneficiary or other rights in the contract being resolved, Tutor has not alleged and cannot allege facts permitting a plausible inference that the Port Authority's conduct was in any way contrary to "equity and good conscience."

In sum, for the reasons stated above, Tutor has failed to allege facts sufficient to state a claim for unjust enrichment due to its failure to meet the second and third elements of that claim.

Accordingly, Court grants the Port Authority's motion to dismiss Tutor's claim for unjust enrichment for failure to state a claim.

### 3. Tortious Interference Merits Based on Alleged Effects of Settlement on Tutor

To state a claim for tortious interference with contract, a plaintiff must allege: (i) the existence of a valid contract between the plaintiff and a third party; (ii) defendant's knowledge of that contract; (iii) defendant's intentional procurement of the third-party's breach of the contract; (iv) the procurement was without justification; (v) actual breach of the contract; and (vi) damages. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). In addition, the plaintiff must allege that the purported breach would not have occurred "but for" the activities of the defendant. *Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am., Inc.*, 299 A.D.2d 204, 204 (1st Dep't 2002). "Although on a motion to dismiss the allegations in a complaint should be construed liberally, to avoid dismissal of a tortious interference with contract claim a plaintiff must support his claim with more than mere speculation." *Ferrandino & Son, Inc. v. Wheaton Builders, Inc., LLC*, 82 A.D.3d 1035, 1036 (2d Dep't 2011).

As to this claim, the parties agree that certain elements are not in dispute. The Port Authority does not argue that Tutor has failed to allege the existence of a valid contract between Tutor and the Debtor, or the Debtor's breach of that contract. Indeed, according to the Complaint, the Debtor "went into default, failing to pay [Tutor] for contract work . . . ." and "[Tutor] and [the Debtor] became involved in arbitration [in February 2015] to determine the extent of the amounts owed to [Tutor] for its work on the Project." Instead, the Port Authority argues that Tutor fails to allege plausibly that Port Authority either intentionally procured the breach or was the but-for cause of the breach.

As to these contested elements, Tutor alleges that the Port Authority "intentionally interfered with [Tutor's] contractual rights under the Construction Contract by, *inter alia.*, compromising claims against [the Debtor] in the Bankruptcy that it knew would vitiate [Tutor's]

23

rights to payment under the Construction Contract." (Complaint ¶ 41). Tutor further alleges that the Settlement "had the effect of fully and finally cutting off any possibility that the Debtor would cure its then current defaults of its payment obligations under the Construction Contract" and that "the PA's actions resulted in the final and total breach of [the Debtor] of its obligations to [Tutor] under the Construction Contract." (Complaint ¶ 43). But the Complaint makes clear that the Debtor alone was the party with the direct payment obligation to Tutor, and Debtor was the party that failed to make payments to Tutor upon Tutor's submission of valid payment applications. In fact, in February 2015, Tutor brought an arbitration proceeding against the Debtor based on its breach of the Construction Contract.

Just as with Tutor's unjust enrichment claim, these allegations are too conclusory and speculative to satisfy the applicable standard and withstand the Port Authority's motion to dismiss. The Complaint includes no allegation that the Debtor's failure to pay Tutor was done at the Port Authority's instruction; that the Port Authority conceived of a plan to deprive Tutor of payment or otherwise interfere with Tutor's own contractual entitlements; or that the Port Authority ever even suggested that the Debtor withhold payments from Tutor. Nor have facts been alleged to support a plausible inference that any supposed "procurement" by the Port Authority was "without justification," again, especially in light of the Ground Lease provision specifying that the Port Authority was not to be liable for any construction work performed on the project, and in light of the Court's now-binding determinations that Tutor lacked any third-party-beneficiary or other direct contractual rights under the Ground Lease. Rather, Tutor relies on "allegations" that are not factual, but that instead assert conclusorily that Port Authority's conduct tortiously interfered with Tutor's contract rights. And, to emphasize, to the extent Tutor asserts that the Port Authority's settlement tortiously interfered with rights that Tutor held under the Ground Lease itself despite

Tutor's not being a party to that agreement, Tutor is collaterally estopped from so contending in light of this Court's previous final orders determining that Tutor had no direct rights under the Ground Lease, whether as a third party beneficiary or otherwise.

The implausibility of claims based on the Settlement Agreement is confirmed by facts that the Complaint does allege, or that are eligible for consideration in this decision. The Debtor breached the Construction Contract years before the Port Authority entered into the Settlement Agreement – which is the only allegedly injurious act upon which Tutor can base a timely tort claim. And "if the alleged underlying breach occurs before the claimed 'inducement' by a defendant, the inducement 'could not have been the "but for" cause of [the] purported breaches.'" *Wiesen v. Verizon Commc'ns, Inc.*, 183 A.D.3d 485, 485–86 (1st Dep't 2020) (citations omitted). Moreover, Tutor has not plausibly alleged that the Port Authority's later agreement with the Debtor to excuse a contractual requirement that the Debtor pay Tutor somehow interfered with Tutor's own rights under its independent, bilateral contract with the Debtor; as noted above, there is no non-speculative reason to believe or factual allegation plausibly suggesting that, but for the Port Authority-Debtor settlement, Debtor would have paid more to Tutor on account of Tutor's contract with Debtor.

Thus, the Court concludes that Tutor has failed to plausibly allege all elements of a tortious interference claim. Accordingly, the Port Authority's motion to dismiss Tutor's claim for tortious interference with contract for failure to state a claim is granted.

The Port Authority raised numerous additional grounds for dismissal, including based on preemption doctrine. The Court has no need to decide these additional issues in light of its determination that the Complaint is to be dismissed for the reasons stated herein.

**CONCLUSION**

For the reasons stated above, the Complaint is dismissed with prejudice, in part based on

Fed. R. Civ. P. 12(b)(1) as to untimely claims and theories that are duplicative of allegations in

Tutor's prior lawsuit against the Port Authority, and in part based on Rule 12(b)(6).

It is SO ORDERED.


Dated: New York, New York
        September 30, 2022

                        _s/ David S. Jones_____
                        Honorable David S. Jones
                        United States Bankruptcy Judge